UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 11-60202-CIV-MORENO/TORRES

HARRY J. SCANLAN,

        Plaintiff,

v.

NATIONAL ASSET RECOVERY
SERVICES, INC.

        Defendant.
_____/

## DEFENDANT, NATIONAL ASSET RECOVERY SERVICES, INC.'S MOTION FOR PARTIAL SUMMARY JUDGMENT AND SUPPORTING MEMORANDUM OF LAW

        COMES NOW, the Defendant, NATIONAL ASSEST RECOVERY SERVICES, INC., INC. (hereinafter referred to as "Defendant" or "NARS"), by and through its undersigned attorneys and pursuant to Rule 56, Federal Rules of Civil Procedure, and hereby requests entry of Partial Summary Judgment in its favor and against Plaintiff, HARRY J. SCANLAN (hereinafter referred to as "Plaintiff"), and as grounds therefore states:

        1.     On or about January 31, 2011, Plaintiff's counsel filed a lawsuit seeking statutory damages for alleged violations of the federal Fair Debt Collection Practices Act ("FDCPA"), Florida's Consumer Collection Practices Act ("FCCPA") and the Telephone Consumer Protection Act ("TCPA") based upon the Defendant's collection communications intended for another individual.

        2.     Defendant denies all liability and damages as to Plaintiff's claims under these statutes and further asserts it is entitled to partial summary judgment as a matter of law since there is no genuine issue of fact as to whether Defendant complied with these statutes.

3. Plaintiff asserts that he is entitled to damages under the FDCPA and TCPA for Defendant's alleged failure to "make meaningful disclosure" on the Plaintiff's answering machine as stated under 15 U.S.C. Sections 1692d(6).

4. However, Defendant asserts that it is entitled to a judgment as a matter of law as there is no genuine issue of material fact in dispute to support an alleged violation of Section 1692d(6) since the Plaintiff is not the debtor or "alleged debtor" as defined by the FDCPA and therefore no disclosure of identification is required under Section 1692d(6) to a non-debtor.

5. Further, Defendant also asserts that certain messages identified by the Plaintiff in this case clearly contain referenced to the actual name of the Defendant as well as "debt collection" purpose of call as required under Sections 1692d(6)

6. Next, Plaintiff seeks statutory damages under the TCPA alleging that the communications directed by the Defendant were initiated from automatic dialing equipment to the Plaintiff's residential telephone is not actionable since the Defendant had an prior business relationship with the intended caller as held in the recent 11th Circuit opinion in Meadows v. Franklin Collection Service, Inc. 2011 WL 479997 (C.A. 11 (Ala)).

7.

WHEREFORE, Defendant, National Recovery Services, Inc. respectfully requests the Court grant Defendant's Motion for Partial Summary Judgment.

## MEMORANDUM OF LAW

### Standard of Review

Rule 56(c) of the Federal Rules of Civil Procedure provides that summary judgment *"shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to*

*any material fact and the moving party is entitled to judgment as a matter of law."* In order to prevail on a motion for summary judgment, the moving party must demonstrate that no genuine issue of material fact exists and that judgment as a matter of law should be granted in the moving party's favor. Smith v. Hudson, 600 F.2d 60, 63 (6th Cir.1979). In considering a motion for summary judgment, the court must view all facts and inferences to be drawn therefrom in the light most favorable to the non-moving party. Matshushita Elec. Indus. Co. Ltd. v. Zenith Radio Corp., 475 U.S. 574, 587-88, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986); SEC v. Blavin, 760 F.2d 706 (6th Cir.1985). Although the moving party has the burden of showing that no genuine issue of material fact exists, the non-moving party, however, may not merely rest on conclusory allegations contained in the complaint, but must respond with affirmative evidence supporting its claim and establishing the existence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 324, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); not every factual dispute between the parties will prevent summary judgment. The disputed facts must be material. They must be facts which, under the substantive law governing the issue, might affect the outcome of the suit. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). The dispute must also be genuine. The facts must be such that, if they were proven at trial, a reasonable jury could return a verdict for the non-moving party. Id. The disputed issue does not have to be resolved conclusively in favor of the non-moving party, but that party is required to present some significant probative evidence that makes it necessary to resolve the parties' differing versions of the dispute at trial. First National Bank v. Cities Service Co., 391 U.S. 253, 288-89 (1968).

## STATEMENT OF UNDISPUTED FACTS

1. On or about July 30, 2009, Defendant, NARS, was retained by the original creditor, GMAC to collect a past due balance from an individual other than the named Plaintiff

in this case. [See Exhibit 1 and 2]

2. From July 31, 2009 until February 2, 2011, NARS made a series to telephone calls to collect a debt from this individual by utilizing a telephone number provided by the original creditor and thought to be owned by the debtor, rather than the Plaintiff. [Exhibit 1]

3. The telephone number called was the residential, and not cellular number of the Plaintiff. [Exhibit 1; Complaint, Paragraph 13]

4. Plaintiff is not the debtor or the alleged debtor and has no personal responsibility for the debt sought for collections by NARS. [Exhibit 1]

5. There is no evidence that NARS had actual knowledge that NARS was calling the Plaintiff rather than the intended caller which was the debtor. [Exhibit 1]

6. NARS' communication was an attempt to collect a debt alleged owed to an individual other than the Plaintiff to which NARS, by and through its client, GMAC, has a prior business relationship as that term is defined by the TCPA and as interpreted by the FCC. . [Exhibit 1]

### ARGUMENT IN SUPPORT OF MOTION
### WITH CITATIONS TO AUTHORITY

### COUNT I

### Section 1692d(6)

Plaintiff asserts in Count I of the Complaint that Defendant violated the Fair Debt Collection Practices Act (FDCPA) by failing to disclose its status as a debt collector and failing to provide meaningful disclosure of its identity.

Defendant asserts that it utilizes both a call messaging system and live collection representatives communicate with intended consumers to which it seeks the collection of past

due debts. Plaintiff's Complaint seeks to itemize the calls that he seeks to impose liability under the FDCPA. [See Complaint, Paragraph 13]

### FDCPA Claims Barred by the Statute of Limitations

First, the record reflects that this lawsuit was filed on January 31, 2011 and that any alleged calls that pre-date January 31, 2010 are automatically barred by the FDCPA's one (1) year statute of limitations. Pursuant to Section 1692k(d), *"An action to enforce any liability created by this subchapter may be brought in any appropriate United States district court without regard to the amount in controversy, or in any other court of competent jurisdiction, within one year from the date on which the violation occurs."* Therefore any reference to liability under FDCPA stemming from the alleged content of calls dating prior to January 31, 2010 as referenced in Paragraph 13 of the Plaintiff's Complaint should be dismissed as a matter of law.

### Pre-Recorded Message Contains Identification of Caller

For those messages that are not subject to the statute of limitations defense, Defendant asserts that it is not legally obligated to comply with Section 1692d(6) if the Plaintiff is not the intended recipient of the call, namely the alleged debtor, Ms. Ivey. In this action, Plaintiff, a non-debtor claims that NARS' employees failed to provide meaningful disclosure of their identities under § 1692d(6), which requires that "[a] debt collector may not engage ... in connection with the collection of a debt [in] ... the placement of telephone calls without meaningful disclosure of the caller's identity." 15 U.S.C. 1692d, (6). (*See* Complaint. ¶ 23) Courts have held that the meaningful disclosure required by § 1692d(6) has been made " 'if an individual debt collector who is employed by a debt collection company accurately discloses the name of her employer and the nature of her business and conceals no more than her real name.' " Joseph v. J.J. Mac Intyre Cos., 238 F.Supp. 1158, 1167 (N.D.Ca. 2002) (*"Joseph I"*) (quoting Wright v. Credit

Bureau of Ga., Inc., 548 F.Supp. 591, 597 (N.D.Ga.1982), *reconsidered on other grounds,* 555 F.Supp. 1005 (N.D.Ga.1983).

In review the messages are applicable to this allegation, NARS' message clearly attempts to discern the proper party and if the called party indicates that they are in fact the debtor, the message provides the identity of the business by name. Defendant argues that in alleging a statutory violation resulting from NARS employees' failure to identify themselves when speaking to the Plaintiff as a non-debtor, Plaintiff misapprehends what the law requires-if NARS' agents had provided meaningful disclosure of their identity to the plaintiff., NARS would have risked an impermissible third-party contact in violation of § 1692c(b). While the statutory language is somewhat ambiguous, courts have been sympathetic to defendant's argument that a debt collector confronted by a third-party gatekeeper, cannot both provide meaningful disclosure pursuant to § 1692d(6) and comply with the requirements of § 1692c(b) preventing the disclosure of a consumer's personal affairs to third parties. *See also:* Fashakin v. Nextel Communications, et al, 2009 WL 790350 (E.D. New York).

In describing how to interpret statutory language, the Supreme Court has stated that there is "no more persuasive evidence of the purpose of a statute than the words by which the legislature undertook to give expression to its wishes." United States v. Am. Trucking Ass'ns, Inc., 310 U.S. 534, 543, 60 S.Ct. 1059, 84 L.Ed. 1345 (1940) (citations omitted). When that language is sufficient to determine the purpose and application of the statute, courts should follow the plain meaning of the text. *Id.* "When that meaning has led to absurd or futile results, ... [or even] when the plain meaning did not produce absurd results but merely an unreasonable one 'plainly at variance with the policy of the legislation as a whole' [the Supreme] Court has followed that purpose, rather than the literal words." *Id.; see also* Koons Buick Pontiac GMC,

Inc. v. Nigh, 543 U.S. 50, 60, 125 S.Ct. 460, 160 L.Ed.2d 389 (2004) ("Statutory construction is a 'holistic endeavor.' ") (quoting United Sav. Ass'n v. Timbers of Inwood Forest Assocs., Ltd., 484 U.S. 365, 371, 108 S.Ct. 626, 98 L.Ed.2d 740 (1988)). "A provision that may seem ambiguous in isolation is often clarified by the remainder of the statutory scheme-because the same terminology is used elsewhere in a context that makes its meaning clear, or because only one of the permissible meanings produces a substantive effect that is compatible with the rest of the law." Koons, 543 U.S. at 60 (quoting United Sav. Ass'n, 484 U.S. at 371) (citations omitted in original).

Here, the two provisions of the FDCPA at issue, § 1692c(b) and § 1692d(6), can be harmonized by (1) recognizing that the meaningful disclosure requirements of § 1692d(6) only apply when the telephone calls being placed are made directly to the consumer or some other party with whom the consumer has consented to allow the debt collector to communicate, and (2) that debt collectors, who, in attempting to reach a debtor, instead speak with some other third-party, may not make a meaningful disclosure of identity to this third-party without running afoul of the privacy-protective provisions of the FDCPA. This is consistent with the purpose of the FDCPA as evidenced by both the statutory structure and scheme and the legislative history, which reflects the drafters' desire to protect consumers from "unfair, harassing, and deceptive debt collection practices," including collection abuse by "disclosing a consumer's personal affairs to friends, neighbors, or an employer." S.Rep. No. 95-382, at *1-2 (1977), *reprinted in* 1977 U.S.C.C.A.N. 1695, 1696; *see also id.* at *4, 1977 U.S.C.C.A .N, at 1699 (noting that the FDCPA included the "extremely important protection" prohibiting "disclosing the consumer's personal affairs to third persons"); *see also* FTC, Statements of General Policy or Interpretation Staff Commentary On the Fair Debt Collection Practices Act, 53 Fed.Reg. 50097 (Dec. 13,

1988) (providing that a debt collector may contact an employee of a telephone or telegraph company in order to contact the consumer, but only allowing the communication of that information "necessary to enable the collector to transmit the message to, or make contact with, the consumer").

On the facts of this case, NARS was correct not to disclose the nature of its calls to the Plaintiff, and clearly refrained from doing so not in an attempt to harass plaintiff by means of anonymous calls, but in a good faith effort to comply with the various goals of the FDCPA.

Therefore, Defendant respectfully requests that the court grant its motion for summary judgment as to each and every allegation under Sections 1692d(6) as presented by the Plaintiff in these operative pleadings.

## COUNT III

### Section 559.72(9) *Fla. Stat.*

Under Count Three, Plaintiff asserts that Defendant violated the Florida Consumer Collection Practices Act (FCCPA) by claiming that Defendant "knew Plaintiff had no connection to Ms. Ivey but continued to call Plaintiff which such frequency as to harass the Plaintiff.

However, Plaintiff misinterprets the nature of this sub-section of the FCCPA but creating a hybrid of a Subsection 7 allegation which is also alleged as Count IV. Sub-section (9) states in pertinent part: No person shall:

> (9) Claim, attempt, or threaten to enforce a debt when such person knows that the debt is not legitimate, or assert the existence of some other legal right when such person knows that the right does not exist.

It is well established that in order to maintain a claim under this sub-section, the Plaintiff must demonstrate that Defendant had actual knowledge of either (1) the illegitimacy of the debt; or (2) assert the existence of some other legal right with actual knowledge that the right does not

exist. It is clear from the evidence that the collection communications from NARS were only intended for Ms. Ivey and not for the Plaintiff. Therefore, NARS did not violate Sub-section 9 as the Plaintiff is unable to provide any material fact to establish that NARS had actual knowledge to support this type of allegation.

## COUNT IV

### Telephone Consumer Protection Act

Scanlan next alleges that NARS violated 47 U.S.C. § 227(b)(1)(B). That section makes it unlawful "to initiate any telephone call to any residential telephone line using an artificial or prerecorded voice to deliver a message without the prior express consent of the called party, unless the call is initiated for emergency purposes or is exempted by rule or order by the [Federal Communications] Commission under paragraph (2)(B)." The FCC has created two regulatory exemptions that are applicable to the debt-collection calls in this case. First, the FCC exempts from the TCPA's statutory prohibition against prerecorded calls any call "made to any person with whom the caller has an established business relationship at the time the call is made[.]" 47 C.F.R. 64.1200(a)(2)(iv). Second, the FCC exempts any call "made for a commercial purpose but does not include or introduce an unsolicited advertisement or constitute a telephone solicitation[.]" 47 C.F.R. 64.1200(a)(2)(iii).

The FCC has made clear that these two exemptions "apply where a third party places a debt collection call on behalf of the company holding the debt." *In the Matter of Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991,* 7 FCC Rcd. 8752, 8773, ¶ 39 (July 26, 1995). The FCC has also clarified that "all debt collection circumstances involve a prior or existing business relationship." *Id.* at 8771–72, ¶ 36.

In Eleventh Circuit in the recent unpublished opinion in Meadows v. Franklin Collection

Service, Inc., 2011 WL 479997 (C.A. 11 (Ala.)) in addressing the very same factual allegations in this matter, stated:

> We agree with the district court that Franklin did not violate the TCPA because its prerecorded debt-collection calls are exempt from the TCPA's prohibitions on such calls to residences. Franklin had an established business relationship with the debtors (Taylor and the Tidmores), and was attempting to contact them at Meadow's number. Because Franklin had an existing business relationship with the intended recipient of its prerecorded calls, and the calls were made for a commercial, non-solicitation purpose, we conclude that those calls are exempt from the TCPA's prohibitions of prerecorded calls to residences.

Id. at 4

More importantly, the Eleventh Circuit clearly held that

> We reject Meadow's argument that because she is a non-debtor, then the debt-collection exemptions do not apply because she did not have an established business relationship with Franklin. As the district court noted, the FCC has determined that all debt-collection circumstances are excluded from the TCPA's coverage, and thus the exemptions apply when a debt collector contacts a non-debtor in an effort to collect a debt. Otherwise, a debt collector that used a prerecorded message would violate the TCPA if it called the debtor's number and another member of the debtor's family answered.

Id.

Defendant asserts that it has demonstrated that Defendant, through its debt collection activities for GMAC has established a business relationship with the intended caller which was clearly Ingrid Ivey and not the Plaintiff Harry Scanlan.

As such, Defendant contends there is no genuine issue of material fact as to support a TCPA claim in this matter since Defendant has undisputedly established that its calls to the Plaintiff's residential phone number were not intended for him but for an individual to which Defendant has demonstrated a prior business relationship and thus such communication is exempt under the TCPA as held in Meadows.

## CONCLUSION

Based on the foregoing, Defendant respectfully requests this Court to grant its Motion for Partial Summary Judgment as to Plaintiff's claims under 15 U.S.C. Section 1692d(6), Section 559.72(9) Fla. Stat. and 47 U.S.C. Section 227(b)(1)(B)

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on **May 26, 2011**, I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF system which will send a notice of electronic filing to:

> Donald A. Yarbrough, Esq.
> P.O. Box 11842
> Ft. Lauderdale, FL 33339

> /s/ Ernest H. Kohlmyer, III
> Ernest H. Kohlmyer, III, Esquire
> Florida Bar Number: 0110108
> SOUTH MILHAUSEN, P.A.
> Gateway Center
> 1000 Legion Place, Suite 1200
> Orlando, Florida 32801
> 407-539-1638
> 407-539-2679 (fax)
> E-mail: Skohlmyer@southmilhausen.com
> Attorneys for Defendant

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 11-60202-CIV-MORENO/TORRES

HARRY J. SCANLAN,

       Plaintiff,

v.

NATIONAL ASSET RECOVERY
SERVICES, INC.

       Defendant.
_____/

## AFFIDAVIT OF CORPORATE REPRESENTATIVE AND RECORDS CUSTODIAN OF NATIONAL ASSET RECOVERY SERVICES, INC.

**COUNTY OF ST. LOUIS** )
**STATE OF MISSOURI** )

       BEFORE ME, the undersigned duly authorized in the County and State aforesaid to administer oaths, personally appeared Trudy Scott, serving and Corporate Representative and/or Records Custodian of National Asset Recovery Services, Inc., having been duly sworn, deposes and says:

       1.     On or about July 30, 2009, Defendant, NARS, was retained by the original creditor, GMAC to collect a past due balance from an individual other than the named Plaintiff in this case. [See Exhibit 1]

       2.     From July 31, 2009 until February 2, 2011, NARS made a series of telephone calls to collect a debt from this individual by utilizing a telephone number provided by the original creditor and thought to be owned by the debtor, rather than the Plaintiff.

       3.     The telephone number called was the residential, and not cellular number of the Plaintiff.

       4.     Plaintiff is not the debtor or the alleged debtor and has no personal responsibility for the debt sought for collections by NARS.

       5.     NARS had no actual knowledge that it was calling the Plaintiff rather than the intended debtor as the records indicate that NARS never spoke with the Plaintiff and it never received any written

communication to cease and desist communications at this telephone number.

6. NARS' attempted communications were an attempt to collect a debt allegedly owed to an individual other than the Plaintiff to which NARS, by and through its client, GMAC, had a prior business relationship as that term is defined by the TCPA and as interpreted by the FCC.

7. The pre-recorded messages left on the Plaintiff's answering machine were purposefully designed pursuant to company policy and to establish a procedure to avoid violations of the Fair Debt Collection Practices Act (FDCPA), namely alleged violations of Section 1692d(6) by providing meaningful disclosure of the company name; Section 1692e(11) to provide a disclosure as to the debt collection purpose of the call and; in compliance with Section 1692c(b) to avoid such disclosures to unauthorized third parties.

Date: 5/26/2011

*Trudy Scott*

Name: TRUDY SCOTT
Title: Account Manager
For: National Asset Recovery Services, Inc.

Subscribed and sworn to before me
this 26 day of May, 2011.

*Christine L. Cervellere*

CHRISTINE L. CERVELLERE
Notary Public
Commissioned for St. Charles County
My Commission Expires: December 15, 2011
Commission Number 07450160

```
        NARS                                  14:44:44 03 FEB 2011

                                                   --OWING--    -RECEIVED-
    CLIENT#    GMC112 GMAC QUADS                                              PRINC
    ACCOUNT#   3535334              AGN/AMT      6,175.95         0.00        ASGN
    NAME       IVY, INGRID F        INT              0.00         0.00        COMM
    NAME2                           CANCELLED        0.00                     AMISC
    ADDRESS    MR-9617 NW 7TH CIR APT 331   ATTORNEY 0.00         0.00        AMISC
    ADDRESS2                        COURT            0.00         0.00        AMISC
    CITY       PLANTATION           MISC             0.00         0.00        AMISC
    ST/ZIP     FL 33324-4982        TOTAL***     6,175.95         0.00        AMISC
    PHONE      954-491-2200                                                   AMISC
    NOTE LNS   313                  NET W/JMT**                 6,175.95      AMISC
    DESK/UNIT  SCD                  STATUS: MGR   COMM: .4                    AMISC
    DOB        ███████████           -- DATE --                               AMISC
    SSN        ███████████           ASSIGNED 08-05-10                        AMISC
    DRL        ███████████           LAST CHG
    CLIENT REF# 564607695            LAST PAY
    FWD-CLIENT                       LAST ACT 02-03-11                        MISC
    INT RATE(D) 0                    CL LC/LP                                 OVERP
    PACKET#                          INTR EFF 08-05-10                        MISC1
    --- SPECIAL FIELDS ---                                                    MISC2
    PATIENT                          SPC FLD4                                 MISC3
    SPC FLD2                         SPC FLD5                                 MISC4
    SPC FLD3                         CREDIT RPT                               MISC5
                                                                              MISC6
    --- TICKLER FILE ---                                                      MISC7
    (1) LAST ACTION DT (/n) 02-02-11   (6) NEXT STEP          T/RES
    (2) COLLECTOR ACTION (?) 113       (7) FOLLOWUP PRIO (1-10)
    (3) TIME TO WORK                   (8) PROMISED PMT DATE
    (4) DATE WORK AGAIN    02-03-11    (9) IMP NOTE LINES
    (5) PROMISED PMT AMT   0.00

    --- FINANCIAL INFORMATION --- FOR ACCOUNT 3535334

    ( 38) MNTHPAYMT    0.00
    ( 39) LOANTYPE     LEAS
    ( 40) CHGOFFAMNT   6175.95
    ( 42) OTHINCOME    0.00
    ( 49) CONTDATE     10-06-04
    ( 77) MNTHLY INC   0.00
    ( 93) INTRATE      0.00
    (136) ACCT STTUS   051
    (166) DIALERCODE   CUBS
    (223) ASSOC CSTS   0.00
    (324) A-PROB       2
    (325) B-STAT VAL   94.95
    (326) C-SCORE      81
    (340) Q-MEDHHINC   46718.00
    (341) R-AVGHHSIZ   2.24
    (342) S-POVERTY    3002
    (349) Z-CUSTOM     3-Silver
    (350) CURR SCORE   81
    (557) NET INT      0.00
    (558) ACCRUD INT   0.00
    (560) NET PRINC    6175.95
    (561) NTASSOCOST   0.00
    (1240) TU_SCORE    527
    (1402) F CODE      00
    (1403) F DESCIPT   GMAC
    (1405) OTHR OBLIG  0.00
```

# GMAC SmartLease® Agreement — Monthly Payment

**LESSEE (and CO-LESSEE) ("You") name and address, including county:**
INGRID F IVY
6040 NW 30TH ST #204
SUNRISE FL 33351
BROWARD

**LESSOR (Retailer):**
ED MORSE SAWGRASS AUTO MALL
14401 W SUNRISE BLVD
SUNRISE FL 33323-3202

029-9057-10681

## THE VEHICLE YOU ARE LEASING

| New/Used | Year | Make & Model | Body Style | Vehicle ID # | Mileage | Primary Use |
|---|---|---|---|---|---|---|
| NEW | 2005 | CHEVROLET MALIBU | 4DR SDN | 1G1ZT59825F130354 | 12 | Personal, Family, or Household |

## FEDERAL CONSUMER LEASING ACT DISCLOSURES

1. **Amount Due at Lease Signing or Delivery (Itemized Below):** $3,048.00
2. **Monthly Payments:** Your first monthly payment of $303.84 is due on OCT 5TH 2004, followed by 47 payments of $303.84 on the 6th of each month. The total of your monthly payments is $18,424.32.
3. **Other Charges** (not part of your monthly payments): Disposition fee (if you do not purchase the vehicle) $ N/A — Total $ N/A
4. **Total of Payments** (The amount you will have paid by the end of the lease): $21,068.48

### Itemization of Amount Due at Lease Signing or Delivery

| | | |
|---|---|---|
| a. Capitalized cost reduction | $ | 2,286.20 |
| b. First monthly payment | $ | 303.84 |
| c. Refundable security deposit | $ | N/A |
| d. Title fees | $ | 8.25 |
| e. Registration fees | $ | 130.76 |
| f. Sales tax | $ | 192.37 |
| g. RENT SUR/TIRE/BATT/MVWEA | $ | 66.50 |
| h. TAG AGENCY FEE | $ | 20.00 |
| i. | $ | N/A |
| **Total** | $ | **3,048.00** |

### How the Amount Due at Lease Signing or Delivery will be paid:

| | | |
|---|---|---|
| a. Net trade-in allowance | $ | N/A |
| b. Rebates and noncash credits | $ | 1,500.00 |
| c. Amount to be paid in cash | $ | 1,548.00 |
| **Total** | $ | **3,048.00** |

### 7. Your monthly payment is determined as shown below:

| | | |
|---|---|---|
| a. Gross capitalized cost | $ | 26,986.45 |
| b. Capitalized cost reduction | $ | 2,286.20 |
| c. Adjusted capitalized cost | $ | 24,700.17 |
| d. Residual value | $ | 11,609.00 |
| e. Depreciation and any amortized amounts | $ | 13,091.17 |
| f. Rent charge | $ | 4,290.11 |
| g. Total of base monthly payments | $ | 17,381.28 |
| h. Lease payments | | 48 |
| i. Base monthly payment | $ | 362.11 |
| j. Monthly sales/use tax (estimated) | $ | 21.73 |
| k. | $ | N/A |
| l. **Total monthly payment** | $ | **303.84** |

8. **Early Termination.** You may have to pay a substantial charge if you end this lease early. The charge may be up to several thousand dollars. The actual charge will depend on when the lease is terminated. The earlier you end the lease, the greater this charge is likely to be.

9. **Excessive Wear and Use.** You may be charged for excessive wear based on our standards for normal use and for mileage in excess of 12000 miles per year at the rate of $ .20 per mile.

10. **Purchase Option at End of Lease Term.** You have an option to buy the vehicle at the end of the lease term for $11,609.00 plus official fees and taxes.

11. Other Important Terms. See your lease documents for additional information on early termination, purchase options and maintenance responsibilities, warranties, late and default charges, and insurance.

### 11. ITEMIZATION OF GROSS CAPITALIZED COST

| | | |
|---|---|---|
| a. Agreed upon value of the vehicle | $ | 26,391.45 |
| b. GMAC administrative fee | $ | 595.00 |
| c. License/registration/title fees | $ | N/A |
| d. Sales tax | $ | N/A |
| e. Other tax (describe) | $ | N/A |
| f. Optional service contract | $ | N/A |
| g. Optional maintenance contract | $ | N/A |
| h. Optional life insurance | $ | N/A |
| i. Optional disability insurance | $ | N/A |
| j. | $ | N/A |
| k. | $ | N/A |
| Gross Capitalized Cost | $ | 26,986.45 |

### 12. THE VEHICLE YOU ARE TRADING

(year) (make) (model) N/A
Gross trade-in value $ N/A
Payoff $ N/A
Net trade-in value $ N/A

### 13. OFFICIAL FEES AND TAXES

TOTAL ESTIMATED FEES AND TAXES THAT YOU MUST PAY DURING LEASE: $2,102.70

| | | |
|---|---|---|
| a. Title/lien fees | $ | 8.25 |
| b. Registration fees/taxes | $ | 531.04 |
| c. License fees/taxes | $ | 378.00 |
| d. Sales/use taxes (including tax on capitalized cost reduction) | $ | 1,185.41 |
| e. Excise taxes | $ | N/A |
| f. Property taxes | $ | N/A |
| g. Other (describe) | $ | N/A |
| h. Other (describe) | $ | N/A |
| i. Other (describe) | $ | N/A |

### 14. MILEAGE

Base Mileage Allowance: ☐ 15,000 miles/year ☒ Low mileage: 12,000 miles/year

Total Allowed Mileage on the Odometer at Lease End: 48012 miles
Starting odometer mileage: 48000 miles
Excess Mileage Charge: $ .20 per mile for each mile

### Insurance Notice

The valid and collectible insurance and personal injury protection insurance of any authorized rental or leasing driver is primary for the limits of liability and personal injury protection coverage required by sections 324.021(7) and 627.736, Florida Statutes.

YOU AGREE THAT YOUR OWN LIABILITY AND PERSONAL INJURY PROTECTION INSURANCE WILL PROVIDE PRIMARY INSURANCE COVERAGE UP TO ITS FULL POLICY LIMITS UNDER THE AGREEMENT.

PROGRESSIVE (NAME OF LESSEE'S INSURANCE COMPANY)

Insurance company name: PROGRESSIVE
Agency address: PO BOX 31260  TAMPA  FL 33631
Agency phone no. (800) 776-4737
Agent's name: PROGRESSIVE
Policy no. 26464846403960
Deductibles: Collision $

17. SCHEDULED LEASE END DATE. This lease is scheduled to end: OCT 5TH 2008
18. LEASE END DAILY EXTENSION CHARGE: $25.00 per day

NOTICE TO LESSEE: DO NOT SIGN THIS AGREEMENT BEFORE YOU READ IT. 2. YOU ARE ENTITLED TO A COPY OF THIS AGREEMENT.

YOU SIGNED AND RECEIVED A COPY AT SUNRISE, FL ON OCTOBER 6, 2004

LESSEE  BY  ED MORSE SAWGRASS AUTO MAL
LESSOR

ED MORSE SAWGRASS AUTO MALL  BY
LESSOR

SEE OTHER SIDE FOR OTHER IMPORTANT AGREEMENTS INCLUDING A PROHIBITION OF TRANSFER OF YOUR INTEREST.

871 MONTHLY-FL 7/2003
Copyright 2003 General Motors Acceptance Corporation. All Rights Reserved

ORIGINAL - GMAC  Lease Agreement B